IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

STEVEN MICHAEL COHOON,

               Plaintiff,                         No.  CV-10-1219-HZ

     v.

MICHAEL J. ASTRUE, Commissioner,         OPINION & ORDER
Social Security Administration,

               Defendant.

Merrill Schneider
SCHNEIDER LAW OFFICES
P. O. Box 14490
Portland, Oregon 97293

       Attorney for Plaintiff

Dwight C. Holton
UNITED STATES ATTORNEY
District of Oregon

/ / /

1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Gerald J. Hill
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Steven Cohoon brings this action seeking judicial review of the Commissioner's

final decision to deny supplemental security income (SSI).  This Court has jurisdiction pursuant

to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)).  I reverse the Commissioner's

decision.

PROCEDURAL BACKGROUND

     Plaintiff applied for SSI on October 30, 2007, alleging an onset date of October 4, 2007.

Tr. 16, 119-21, 126.  His application was denied initially and on reconsideration.  Tr. 60, 61, 65-

68, 74-76.

     On September 21, 2009, an Administrative Law Judge (ALJ) conducted a telephone

hearing from Albuquerque, New Mexico.  Tr. 16, 29-54.  Plaintiff, who was incarcerated,

appeared at the hearing by telephone.  Id.; Tr. 31.  Plaintiff's counsel appeared at the hearing by

telephone from Portland.  Id.  On December 8, 2009, the ALJ found plaintiff not disabled.  Tr.

13-24.  The Appeals Council denied review.  Tr. 1-5.

/ / /

2 - OPINION & ORDER

FACTUAL BACKGROUND

Plaintiff alleges disability based on having been shot in the face and right shoulder on October 4, 2007, while in the process of committing a burglary.  Tr. 18, 131.  At the time of the hearing, he was thirty-six years old.  Tr. 32.  He has a twelfth-grade education and has past relevant work experience in construction and as a light fixture servicer.  Tr. 32, 39, 48.  Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure.  See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one

of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 18.  Next, at steps two and three, the ALJ determined that plaintiff has severe impairments of left eye visual disturbance and status post right shoulder gunshot trauma, but that the impairments do not meet or equal, either singly or in combination, a listed impairment. Tr. 18-20.

At step four, the ALJ concluded that plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) with no use of the right upper extremity and with the following limitations:  no more than frequent stooping, kneeling, crouching, or climbing of ramps or stairs; no more than occasional balancing, crawling, or

4 - OPINION & ORDER

climbing of ladders, scaffolds, or ropes; visual limitations consistent with left eye blindness; and the need to avoid concentrated exposure to extreme cold, heat, humidity, and hazards. Tr. 20-21.

With this RFC, the ALJ determined that plaintiff was unable to perform any of his past relevant work. Tr. 22. However, at step five, the ALJ determined that plaintiff was able to perform jobs that exist in significant numbers in the national economy such as school bus monitor, chaperone, or host. Tr. 22-23. Thus, the ALJ determined that plaintiff was not disabled. Tr. 23-24.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

DISCUSSION

Plaintiff contends that the ALJ committed the following errors: (1) improperly rejected

5 - OPINION & ORDER

plaintiff's subjective testimony; and (2) at step five, improperly relied on a "vocational decision worksheet" instead of the testimony of a vocational expert (VE) in identifying jobs plaintiff could perform.

I.  Plaintiff's Testimony

Plaintiff testified that he was shot in the left side of his face and in his right shoulder.  Tr. 36.  He explained that he has no vision in his left eye and still has pellets trying to protrude out of the side of his face.  Id.  The remaining pellets cause some pain, which increases if plaintiff lies on his side.  Tr. 37.  His depth perception is "pretty bad," throwing off his equilibrium, and he has no peripheral vision.  Tr. 38.  Glare from lights gives him headaches and affects his ability to read.  Tr. 39.  Plaintiff also testified that he has "bad vision" in his right eye, including problems with glares from lights.  Tr. 38.

As to his arm, he was shot on the top of his right shoulder.  Tr. 39.  His clavicle was shattered and his rotator cuff destroyed.  Id.  He cannot lift his right arm above his chest and can hold little to no weight with his right arm.  Id.  Plaintiff is right-handed.  Tr. 40.  He explained that he has trouble using his left hand for tasks that he used to do right-handed.  Tr. 41.  He testified that his arm hurts all the time, with an increase in pain if he uses it, and it sometimes falls asleep.  Tr. 46.  It feels like a vise closing on his arm.  Id.

As a child, plaintiff suffered a compound fracture of his left elbow which somewhat limits the amount of weight he can lift with his left arm.  Tr. 41.  He estimated he could lift twenty or thirty pounds for a minimal time with his left arm.  Id.

Plaintiff further testified that he has back pain that limits his ability to stand for long periods of time.  Tr. 42.  He attributed this, at least in part, to a fifty-pound weight gain since

2007, which he in turn attributed to depression and limitation in the work activities available to

him in prison as a result of his impairments.  Tr. 42-43.  Plaintiff has a hard time sleeping.  Tr.

44.  He often gets four to five hours of "not that good a sleep" and has nightmares "two, three, or

more" times per week as a result of being shot.  Tr. 44-45.  His inability to participate in any

work at the prison makes him "pretty depressed."  Tr. 45.

Pain impacts plaintiff's ability to concentrate.  Tr. 44.  He explained that it sometimes

makes his concentration "minimal" and causes his mind to wander.  Id.

At the time of the hearing, plaintiff was taking amitriptyline for depression, and to help

with his pain.  Tr. 46.

After proceeding through steps one through three of the sequential evaluation, the ALJ

discussed plaintiff's RFC.  Tr. 20-22.  As part of that discussion, the ALJ, after stating the

standard for evaluating a claimant's symptom testimony, explained that:

> [i]n his initial disability report, the claimant alleged no functional use of his right
> arm, and no vision in his left eye.  The claimant alleged chronic pain exacerbated
> by exertion and cold, poor sleep, and headaches. . . . The claimant also alleged
> memory and concentration problems secondary to his gunshot wounds.  However,
> the claimant also reported that he watched television, was able to shop in stores,
> use the telephone, [and] went outside "all the time." . . .  In his March 2008 appeal
> report, the claimant acknowledged that his right shoulder pain had improved, and
> that he had been found to have 20/400 visual acuity in his left eye. . . .  At the
> hearing, the claimant testified that he was capable of lifting 20 to 30 pound[s]
> with his left arm.  The claimant also alleged poor right eye vision, and [the]
> inability to stand more than half an hour at a time due [to] a remote back injury;
> however, the claimant's allegations were not supported by the medical evidence.
> Eye exams noted that the claimant[']s right eye had the visual acuity of 20/50
> uncorrected, with no reported symptoms. . . . The clamant also alleged poor depth
> perception and balance.
>
> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Tr. 21 (citations omitted).

As can be seen from the RFC adopted by the ALJ, the ALJ did not reject all of plaintiff's testimony. He credited plaintiff's testimony regarding the lack of use of his right arm, the exacerbation of his pain caused by cold temperatures, his lifting capacity of twenty pounds with the left arm, some problems with balance, and the lack of vision in the left eye.

However, the ALJ also clearly rejected parts of plaintiff's testimony. Specifically, he appears to have rejected plaintiff's testimony regarding his impaired concentration and memory because it conflicted with plaintiff's activities of daily living.[1] The ALJ also appears to have rejected plaintiff's testimony regarding plaintiff's right eye and his back pain because it was not supported by medical evidence.

The ALJ is responsible for determining credibility. Vasquez, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'").

---

[1]  I note that this "appears" to be the case because the ALJ does not expressly state that he rejected this testimony because it was inconsistent with plaintiff's activities.

8 - OPINION & ORDER

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. Id.

Plaintiff argues that the ALJ's rejection of his subjective statements regarding his symptoms and their intensity, persistence, and limiting effects "to the extent they are inconsistent with the above residual functional capacity assessment" is legally unsupportable because it "reverses the manner" in which a claimant's credibility must be assessed. Pltf's Op. Mem. at p. 7.

Defendant argues that the ALJ did not cite inconsistency with the RFC assessment as a reason to discount plaintiff's testimony. Deft's Mem. at p. 5. Rather, defendant contends, "the ALJ referenced the residual functional capacity assessment to explain the extent to which he found Plaintiff's statements incredible." Id. Moreover, defendant argues, because the ALJ adopted the opinion of Disability Determination Services (DDS) non-examining physician Dr. Mary Ann Westfall, to the extent plaintiff's subjective testimony conflicts with the ALJ's RFC assessment, the testimony conflicts with Dr. Westfall's opinion, which, according to defendant, is a sufficient reason for the ALJ to reject plaintiff's statements in favor of Dr. Westfall's opinion. Id. (citing to Tr. 20-21, 468-75).

I agree with plaintiff that as to some parts of plaintiff's testimony, the ALJ used improper circular reasoning. But, this reasoning was not the only basis the ALJ gave in support of his rejection of plaintiff's subjective testimony and thus, I address the entirety of the ALJ's decision

on this issue.  I also reject defendant's argument that the ALJ in essence rejected plaintiff's

subjective testimony because it conflicted with Dr. Westfall's opinion.  The argument was not

articulated by the ALJ and thus it is improper, post-hoc rationalization by defendant which this

Court may not consider.  Bray v. Comm'r, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (court cannot

rely upon reasoning the ALJ did not assert in affirming the ALJ's findings) (citing SEC v.

Chenery Corp., 332 U.S. 194, 196 (1947)); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.

2003) (citing same).

        As noted above, it appears that the ALJ rejected plaintiff's testimony regarding his

memory and concentration because it was inconsistent with the activities plaintiff reported in

November 2007.  Tr. 21.  In particular, the ALJ cited plaintiff's ability to watch television, shop

in stores, use a telephone, and go outside "all the time" as support for this determination.  But, an

examination of the report shows that the ALJ failed to consider the report in its entirety.

        In response to a question seeking information on plaintiff's hobbies and interests, plaintiff

stated he watched television or movies on television.  Tr. 162.  But, plaintiff also indicated that

he falls asleep while watching as a result of being unable to sleep at night, and further, that he

cannot remember everything he watches because of having been shot and having "pellets in

head."  Id.  Plaintiff described his "shopping" as going to the store for food once per week with

his mother.  Id.  He explained that he does not go "anywhere very often" because he hurts "too

bad."  Id.

        In a section of the report entitled "getting around," plaintiff responded to the question

inquiring how often he goes outside as "all the time."  Tr. 161.  But, as the ALJ himself noted,

plaintiff's mother, in her own report, stated that plaintiff's "self-reported time outside was

10 - OPINION & ORDER

significantly spent sitting on the back patio, suggesting [] a greater degree of limitation than might have otherwise been inferred from the claimant's report on his activities of daily living." Tr. 22 (citing  Tr. 146).

The activities cited by the ALJ do not contradict plaintiff's testimony that his memory and concentration are impaired as a result of his injuries.  The ALJ referred to certain activities, without considering the entire report.  This was error.  See Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content or tone of the record" and thus, did not support the rejection of plaintiff's testimony). Additionally, even if the ALJ had not overlooked the full context of plaintiff's report, the cited activities of watching television, shopping, using a telephone, and going outside are not inherently inconsistent with plaintiff's testimony that his impairments affect his ability to concentrate and remember.  See, e.g., Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (activities of watching television, reading, and coloring were "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace").

Defendant argues that because the ALJ, at step two, found plaintiff's mental impairment to be non-severe with no more than mild limitations in mental functioning, the ALJ properly rejected plaintiff's testimony regarding concentration and symptoms of depression as being inconsistent with medical opinions.  There are several problems with this argument.  First, this finding was at step two and was not part of the subsequent assessment of plaintiff's credibility which is done as part of arriving at an RFC.  See Tr. 19 (ALJ explained that limitations noted as "paragraph B" criteria of listed mental impairments are used to "rate the severity of mental impairments at steps 2 and 3" and are distinct from the mental RFC assessment which occurs at

steps four and five).

Second, in the step two finding, the ALJ initially discussed whether the diagnosis of "adjustment disorder, provisional" given following an independent psychodiagnostic evaluation by psychologist James E. Bryan, Ph.D., was a severe impairment. Tr. 18 (citing Tr. 350-58). Whether an "adjustment disorder" is non-severe because of minimal limitations is not the same inquiry as whether plaintiff's testimony regarding his impaired concentration is credible.

Third, the ALJ next noted, in support of his step two determination that plaintiff's mental impairment was non-severe, that DDS psychological consultant Peter LeBray, Ph.D., found that plaintiff had a mild limitation in concentration, persistence, and pace. Tr. 19 (citing Tr. 364-77). This actually supports, rather than detracts from, plaintiff's argument that the ALJ erred in wholesale rejecting plaintiff's testimony regarding memory and concentration because Dr. LeBray's opinion suggests that the memory and concentration issues are a matter of degree, as opposed to non-existent.

Fourth, even if defendant's argument had merit, it is not the argument advanced by the ALJ for rejecting plaintiff's testimony and so, may not be considered. E.g., Bray, 554 F.3d at 1225-26.

The ALJ failed to mention plaintiff's testimony regarding his difficulty using his non-dominant hand and failed to give any reason for apparently rejecting his testimony regarding his poor depth perception. Without a specific explanation for why the ALJ failed to credit this testimony, I am left to conclude that the ALJ relied on his general statement that he rejected plaintiff's subjective statements to the extent they were inconsistent with his RFC. Other judges in this Court have rejected this reasoning as erroneously circular and inconsistent with the

12 - OPINION & ORDER

sequential analysis.  <u>Carlson v. Astrue</u>, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010) ; <u>Young v.</u>

<u>Astrue</u>, No. CV-09-23-AC, 2010 WL 331781 at *5 (D. Or. Jan. 21, 2010).

     In <u>Carlson</u>, as in this case, the ALJ found the claimant's testimony "not credible to the

extent" his statements were "inconsistent with" the RFC.  <u>Carlson</u>, 682 F. Supp. at 1167.  In her

Findings & Recommendation, later adopted by Judge Haggerty, Judge Stewart explained that

"the ALJ's analysis reverses the manner in which he must consider credibility."  <u>Id.</u> (citing 20

C.F.R.§ 416.945(a)(3); Soc. Sec. R. 96-8p at *7).  Judge Stewart noted that "[n]o authority

suggests an ALJ may reason that a claimant is not credible based upon the claimant's RFC

assessment."  <u>Id.</u>  She concluded that the ALJ erred because finding that the claimant was not

credible based upon the RFC disregarded the role of credibility analysis in determining an RFC.

<u>Id.</u>; <u>accord</u> <u>Young</u>, 2010 WL 331781, at *5.

     In a similar case, Judge Hubel found that the ALJ erred by rejecting the opinions of two

examining psychologists because those opinions were inconsistent with the mental limitations

identified by the ALJ.  <u>Kirkpatrick v. Barnhart</u>, No. CV-03-657-HU, Findings &

Recommendation at p. 32 (D. Or. July 22, 2004), <u>adopted by Judge Marsh</u> (D. Or. Sept. 13,

2004).  There, Judge Hubel explained that the

> ALJ's determination of the claimant's functional capacity is to be based on the
> medical and other evidence in the record.  This presupposes that the functional
> capacity determination <u>follows</u> the evaluation of the relevant evidence.  What the
> ALJ has done here is to make a determination of the plaintiff's residual functional
> capacity and <u>then</u> use that determination to reject the medical opinions that
> suggest that plaintiff's residual functional capacity is less than what the ALJ has
> determined.  The functional capacity determination which comes after the
> evaluation of the evidence, should not be used to discredit that very evidence.
> The ALJ erred in this regard.

<u>Id.</u>

13 - OPINION & ORDER

I agree with these earlier decisions on this issue, and conclude that the ALJ's rejection of subjective testimony "to the extent" that testimony is inconsistent with the ALJ's RFC, is legal error.

The ALJ's reasons for rejecting plaintiff's testimony regarding concentration and memory impairment are not clear and convincing. The ALJ's general rejection of plaintiff's testimony based on an alleged inconsistency with the RFC, is legally unsupportable. Although the ALJ's rationale for rejecting plaintiff's testimony regarding poor right eye vision and back pain is not challenged as erroneous, it alone cannot support the rejection of plaintiff's subjective testimony because that rationale was expressly directed only to the specific testimony regarding plaintiff's right eye and back pain. In some circumstances an ALJ's error in rejecting plaintiff's subjective testimony may be harmless if there are other clear and convincing reasons put forth in support of the ALJ's determination. Carmickle, 533 F.3d at 1162-63. Here, when the only error-free basis is limited to very specific testimony and there are no other bases upon which the rejection of other subjective testimony may be properly attributed, the ALJ's credibility determination is not legally valid.

II. Step Five Determination

During the hearing, the ALJ asked the VE whether jobs exist in the national economy for an individual with plaintiff's age, education, work experience, and with an RFC which was less restrictive than the one ultimately adopted by the ALJ. Tr. 23, 48-53. In response, the VE testified that such an individual would be capable of performing other work. Id. However, as the ALJ explained in his decision, plaintiff persuasively argued in a letter submitted one day after the hearing, that he was more limited than the proposed hypothetical individual. Tr. 23, 197.

14 - OPINION & ORDER

The ALJ then expressly adopted the RFC provided by Dr. Westfall on April 25, 2008.

Tr. 23 (citing Tr. 468-75). He stated:

> Based on Dr. Westfall's more restrictive assessment, a vocational specialist, Tia
> M. LaFontaine, determined that the claimant was capable of making a successful
> adjustment to other work that exists in significant numbers in the national
> economy; specifically that the claimant would be capable of wide range of
> sedentary occupations including such jobs as: school bus monitor, DOT 372.667-
> 042; chaperone, DOT 359.667-010; or host, DOT 349.667-014. The vocational
> specialist additionally cited the Occupational Outlook Handbook as the basis that
> such jobs existed in significant numbers in the national economy. . . .
>
> Pursuant to SSR 00-4p, the vocational specialist's findings are consistent with the
> information contained in the Dictionary of Occupational Titles.
>
> Based on the evidence of the vocational specialist, the undersigned concludes that,
> considering the claimant's age, education, work experience, and residual
> functional capacity, the claimant is capable of performing other work.

Tr. 23 (citing Tr. 185-87).

Plaintiff argues that the ALJ's step five finding is not supported by substantial evidence

because the record does not show that the vocational decision worksheet completed by

LaFontaine and relied upon by the ALJ, included all the limitations established by the ALJ's

RFC. Additionally, plaintiff contends that the ALJ's reliance on this evidence deprived

plaintiff's counsel of the opportunity to question the VE at the hearing, the ALJ failed to

determine if the analyst's findings were consistent with the Dictionary of Occupational Titles, and

the record is unclear whether plaintiff's visual limitations prevent him from performing the jobs

identified by the analyst.

Defendant contends that the ALJ's inference that LaFontaine completed the vocational

decision worksheet based on Dr. Westfall's RFC is reasonable and should be affirmed.

Defendant contends that plaintiff's remaining arguments are without merit.

15 - OPINION & ORDER

At step five, the ALJ considers the "vocational factors" of the claimant's age, education, and past work experience, along with the claimant's RFC, to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 540 U.S. 20, 25 (2003); 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).

When a claimant's ability to perform the range of work permitted by the claimant's exertional limitations is not compromised by non-exertional limitations, or if any non-exertional limitations are not sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations, the ALJ may rely on the Medical-Vocational Guidelines, or "the grids," in making the step five determination. Hoopai v. Astrue, 499 F.3d 1071, 1075 (9th Cir. 2007). If a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations, the ALJ may not rely on the grids and instead, the testimony of a vocational expert is required. Id. at 1075-76; see 20 C.F.R. §§ 416.969, 416.969a (regarding use of the grids); see also Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999) ("There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can perform: (a) by the testimony of a vocational expert, or (b) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2").

In his decision, the ALJ recognized that plaintiff's "additional limitations" impeded plaintiff's ability to perform all or substantially all of the requirements of light work. Tr. 23. Thus, he appropriately questioned the VE at the hearing regarding the existence of jobs in the national economy for someone with plaintiff's vocational factors and RFC. Id. As noted, however, the ALJ determined, after the hearing, that the RFC he presented to the VE was not

16 - OPINION & ORDER

restrictive enough and he relied instead on the "Vocational Decision Worksheet" prepared by

LaFontaine, whom the ALJ identified as a "vocational specialist." Tr. 185-87.

This was error. As noted above, the Ninth Circuit has expressly held that when the grids

are inapplicable because a claimant's non-exertional impairments significantly limit the range of

work that the claimant may be otherwise capable of performing, the testimony of a VE is

required. E.g., Hoopai, 499 F.3d at 1075; Reddick, 157 F.3d at 729 (ALJ "must" take testimony

of VE when "claimant's work capacity is significantly diminished beyond that caused by an

exertional impairment"); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) ("When a

claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the range

of work permitted by the claimant's exertional limitations . . . the Secretary must take the

testimony of a vocational expert[.]") (emphasis added; citation omitted).

This requirement is consistent with the policies established in the relevant social security

policy rulings and statements. First, Social Security Ruling (SSR) 00-4p, identified as a "Policy

Interpretation Ruling," regarding vocational expert and vocational specialist evidence and other

reliable occupational information "clarifies our standards for use of vocational experts (VEs) who

provide evidence at hearings before administrative law judges (ALJs), vocational specialists

(VSs) who provide evidence to disability determination services (DDS) adjudicators, and other

reliable sources of occupational information in the evaluation of disability claims." SSR-004p,

available at 2000 WL 1898704, at *1.

The ruling provides guidance on the resolution of conflicts between VE or VS evidence

and information in the Dictionary of Occupational Titles. Id. at *2. In explaining the

information obtained at steps four and five of the sequential evaluation, the ruling notes that the

17 - OPINION & ORDER

Social Security Administration uses vocational <u>experts</u> to provide evidence at a hearing before an ALJ, but that at "the initial and reconsideration steps of the administrative review process, adjudicators in the DDSs may rely on [vocational <u>specialists</u>] for additional guidance." <u>Id.</u>

Additionally, SSR 83-12, available at 1983 WL 31253, is a "Program Policy Statement" which addresses the use of the grids as a "framework" for evaluating certain limitations. It explains that when a claimant's exertional RFC does not coincide with any one of the ranges for work defined in 20 C.F.R. §§ 404.1567 and 416.967, the "occupational base" reflected in the rules may be affected. <u>Id.</u> at *2. When "the extent of erosion of the occupational base is not clear," the adjudicator must consult a vocational resource. <u>Id.</u> In complex cases, a person with specialized knowledge is helpful. <u>Id.</u> Notably, the ruling then states that "[s]tate agencies may use personnel termed vocational consultants or specialists, or they may purchase the services of vocational evaluation workshops. Vocational experts may testify for this purpose at the hearing and appeals levels." <u>Id.</u>

These rulings acknowledge the distinct roles of a VE and a VS. A VE is used at the hearing level to testify in response to questions posed by the ALJ, and perhaps, the claimant's counsel. A VS is used by the state DDS agencies, which consider the claimant's application at the initial levels of adjudication.

The applicable regulation in the Code of Federal Regulations indicates that when the issue at step five is whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist." 20 C.F.R. § 416.967(e). Although the reference to "other specialist" could suggest that reliance on a "vocational specialist" as opposed

to a "vocational expert" may comply with the regulation, the Ninth Circuit case law, as supported by the SSRs noted above, requires, at the hearing stage, the use of a vocational expert.

Here, the record shows that LaFontaine is a "disability analyst," not a "vocational specialist" as recited by the ALJ.  Tr. 185-87.  Even if she were a VS, the record indicates that her assessment was used by the state DDS agency at the reconsideration level.  See Tr. 185-87 (LaFontaine's vocational decision worksheet, dated May 6, 2008); Tr. 188 (LaFontaine's recommendation to affirm initial determination, dated May 6, 2008); Tr. 74 (reconsideration denial noting that claim was reviewed by a physician and disability examiner at DDS, dated May 7, 2008).  According to the relevant SSRs, use of a VS in this manner at the state agency level is appropriate.

What is not appropriate, however, is the ALJ's reliance on LaFontaine's assessment at the hearing level.  Because the testimony of a VE is required, the occupational evidence provided by LaFontaine is not substantial evidence capable of supporting the ALJ's step five decision.  The ALJ erred in relying on this testimony.  Given my conclusion, I do not address plaintiff's remaining arguments.

Plaintiff seeks remand for additional proceedings.  This is appropriate given that the ALJ erred in his rejection of plaintiff's subjective statements, and accordingly, the ALJ did not consider incorporating the subjective statements into the RFC, making it invalid.  Additionally, because the ALJ did not rely on the VE testimony, plaintiff's counsel was unable to develop a record regarding occupational evidence based on a more restrictive RFC.  As a result, outstanding issues remain and remand for additional proceedings is required.

/ / /

19 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.


Dated this __30th____ day of __August_____, 2011



_/s/ Marco A. Hernandez_____
Marco A. Hernandez
United States District Judge

20 - OPINION & ORDER